**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **HARRY KEVIN WADE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:18-cv-2475-TWP-DLP** |
| | ) |
| | ) |
| **INDIANA DEPARTMENT OF** | ) |
| **CHILD SERVICES**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harry Kevin Wade, by counsel and pursuant to Federal Rule of Civil Procedure

56 and Local Rule 56.1, respectfully submits the following response in opposition to Defendants'

motion for summary judgment.

**I.**
**SUMMARY OF RESPONSE**

Defendants want it both ways. In their motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), Defendants convinced the Court to dismiss Plaintiff Harry Kevin Wade's Due

Process claim under the Fourteenth Amendment, primarily, because "Wade cannot show that he

was entitled to continued employment with the State of Indiana or DCS because he was not a

public employee for either." D/E 93, pg. 5.

Now, Defendants want this Court to enter summary judgment in their favor because he was

a quasi-State employee (*i.e.*, an independent contractor) who was speaking out about a private

concern. The Court should not allow Defendants to have it both ways. As the Court noted in its

Entry Granting Defendants' Partial Motion to Dismiss, Wade was not a public employee. Because

1

Wade was not a public employee, the *Pickering* balancing test does not apply.[1]

Instead, the test that this Court should apply in resolving the Parties' cross-motions for summary judgment is the one set forth by the United States Court of Appeals for the Seventh Circuit in *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009). In *Bridges*, the Seventh Circuit explained that, in order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Id*. at 546.

In this case, Defendants retaliated against Plaintiff Harry Kevin Wade in violation of his First Amendment rights. Specifically, Wade possesses certain religious beliefs about transgendered individuals. Wade expressed his religious belief to Defendant Kelly McSween who then discussed Wade's religious beliefs with the other Defendant. Contrary to Defendant's implication, Wade never refused to provide counseling services to this transgendered individual. Instead, Wade simply voiced his religious beliefs and expressed his concerns that the assignment may not be the best fit. Approximately one week after he made his religious beliefs known to McSween and after the other Defendants learned of his religious beliefs, Wade had lost his job as a counselor at Defendants' behest, and Defendants undertook efforts to ensure that Wade would be blackballed in his attempts to find future employment as a counselor.

Accordingly, the undisputed, material facts clearly show that Wade has satisfied his

---

[1] To the extent that the Court finds that the Unites States Supreme Court's holding in *Board of Cty. Comm'rs, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 679 (1996), applies, the Supreme Court's holding supports Wade's position, in that, the Supreme Court held that the First Amendment protects independent contractors from termination or prevention of automatic renewal of at-will government contracts in retaliation for their exercise of freedom of speech.

obligation under *Bridges*, which is the relevant test in this situation.  Defendants took adverse actions against Wade because he expressed his constitutionally protected speech that was based upon his religious convictions.

In short, Defendants retaliated against Wade because he exercised his First Amendment rights.  Therefore, it is Wade—not Defendants—who is entitled to summary judgment.  At a minimum, Wade respectfully submits that questions of fact preclude summary judgment in Defendants' favor, and thus, the Court should set this matter for trial, if it determines that Wade is not entitled to summary judgment.

## II.
## STATEMENT OF MATERIAL FACTS IN DISPUTE

Wade respectfully submits that these questions of fact preclude summary judgment in Defendants' favor.

### A.   Defendants (other than Terry Stigdon against whom Wade only seeks injunctive relief) were personally involved in retaliating against Wade.

Despite their denials in their declarations, the material facts demonstrate that Defendants took actions and were personally involved in Wade's termination and that they took actions to ensure that he could not work for a DCS provider in the future.  Indeed, Defendants acknowledge in their declarations that they were involved in the events that led to Wade's termination.

Wade expressed his concerns based upon his religious beliefs in counseling the transgendered child to Defendant McSween. Wade Aff. at ¶¶ 13 & 14.  Defendant McSween informed her supervisor of this conversation. McSween Declaration at ¶ 14.  McSween supervisor repeated this conversation to Defendant Decker, and Defendant Decker, along with McSween, decided that it would be inappropriate for Wade to provide counseling services to the transgendered child. Decker Declaration at ¶ 15.

3

After being informed of Wade's conversation with McSween and of McSween and Decker's recommendation that Wade not be allowed to provide counseling services to the transgendered child, Defendant Killen—after consulting with and obtaining the agreement of Defendants Sparks and Reed—contacted Wade's employer, Lifeline Youth and Family Service, Inc. ("Lifeline"), to ensure Wade's termination from Lifeline because he had expressed his religious beliefs and to ensure that he could not find future employment because he had expressed his religious beliefs. Reed Declaration at ¶¶ 37-40; Wade Summary Judgment Exhibit D at DCS 000106.  Finally, Defendants contacted DCS's attorney, Jacob May, who authored the letter, which stated that Wade "could no further contact with DCS clients." Wade Aff. at ¶ 26; Wade Summary Judgment Exhibit F.  No reason was provided in the DCS letter other than the bald assertion that "DCS has become dissatisfied with the services provided by Mr. Wade." Wade Aff. at ¶ 27; Exhibit F.

Accordingly, each Defendant played a role in retaliating against Wade because of his religious beliefs.[2]  McSween relayed Wade's religious beliefs, and the other Defendants determined that Wade could not provide counseling services in light of those religious beliefs. *Id*. And, Defendants agreed that Wade could not provide counseling services in the future in light of his religious beliefs. *Id*.  In taking these actions, Defendants were personally involved in retaliating against Wade, and therefore, they each possessed the personal involvement necessary to be held liable under 42 U.S.C. § 1983.

---

[2]  Defendants further acknowledge their roles in retaliating against Wade in their responses to Wade's Interrogatories six and seven. Wade Summary Judgment Exhibit E.

**B.** **Wade's expression of his religious beliefs was a motivating factor in Defendants' successful efforts to terminate his employment and to ensure that he would be unable to obtain employment in the future even though Wade never refused to provide counseling services to the transgendered child.**

On page eight of their summary judgment brief, Defendants argue: "The decision [*i.e.*, to deprive Wade of the opportunity to provide services to DCS's clients either through Lifeline or through any future provider] was made because Plaintiff indicated that he could not provide services to certain DCS clients—specifically transgendered clients—without expressing his personal views or having his personal view interfere with the patient/therapist relationship."

However, this argument is factually untrue and is unsupported by the evidence cited by Defendants. Initially, Wade notes that Defendants cite paragraph 41 of the Declaration of Defendant Decker in support of their argument. Wade never had a direct conversation with Decker regarding his religious beliefs or his ability or inability to provide counseling services to any DCS's clients including to the transgendered child at issue in this case. Therefore, Decker is not in a position to offer testimony as to Wade's alleged refusal or inability to provide counseling services to transgendered individuals, and the Court should disregard Decker' testimony as hearsay.

Defendants' argument on page eight of their summary judgment brief continues: "In the opinion of Reed, Sparks, and Killen, Plaintiff's view of transgendered individuals directly conflicts with the contract DCS maintains with Lifeline, which states that 'service providers will provide a culturally competent, safe, and supportive environment for all youth regardless of sexual orientation.' Plaintiff's views also directly conflicts with the contract DCS maintains with Lifeline in that his view is contrary to the Guidebook for Best Practices with LGBTQ Youth, which provides that '[It] is the expectation that providers and staff treat all individuals and families respectfully and nonjudgmentally, irrespective of one's personal views of sexual orientation and/or

gender identity.'"

Defendants' argument clearly takes away any contention that Wade's expression of his religious beliefs was not a motivating factor in Defendants' retaliation against him. It clearly was. In fact, Defendants have specifically argued on page eight of their brief that they took the retaliatory actions against him because he expressed his religious beliefs and because they did not believe that he could provide counseling services without expressing his religious beliefs.

Of course, Defendants Reed, Sparks, and Killen were not in a position to know what, specifically, Wade had expressed to McSween. Had they inquired directly, Defendants Reed, Sparks, and Killen would have learned that Wade never refused to provide counseling services to the transgender client. Wade Aff. at ¶ 15. Therefore, Wade never violated any DCS policy(ies) regarding providing counseling services to a DCS client(s). *Id*. at ¶¶ 16 & 18. Wade never violated any Lifeline policy(ies) regarding providing counseling services to a DCS client(s). *Id*. at ¶¶ 17 & 19. Defendants simply assumed that Wade was incapable of providing counseling services because he held and had expressed his religious beliefs.

Instead, Wade agreed to provide counseling services to the transgendered child. Wade Summary Judgment Exhibit D at DCS 000104. It was Defendants who decided that it would not be appropriate—given Wade's religious views—to allow him to provide counseling services to the transgendered child, even though he had agreed to set aside his personal belief in providing counseling services as he does in providing counseling to anyone. *Id*. at DCS 000106-108; Wade Aff. at ¶¶ 15-19.

**C.    The only relevant, material facts are those set forth by Wade in his cross-motion for summary judgment.**

The full recitation of the relevant facts are found in Wade's motion for summary judgment. But, the shortened version is as follows. At no time did Wade ever refuse to provide counseling

services to the transgendered child referred to Lifeline by DCS. *Id*. at ¶ 15.  At no time did Wade ever violate any DCS policy(ies) regarding providing counseling services to a DCS client(s), including by expressing his personal beliefs into a counseling session. *Id*. at ¶ 16.

After and because he expressed his religious beliefs, Defendant McSween took affirmative action with Lifeline to ensure his termination of employment with Lifeline. *Id*. at ¶ 20; Wade Summary Judgment Exhibit D.  In addition, McSween obtained the agreement and the cooperation of the other named Defendants to obtain my termination of employment with Lifeline. *Id*.; Exhibit E at Interrogatory Responses 6 & 7.  Defendants knew or reasonably should have known that the vast majority of Lifeline's client referrals came from DCS. Exhibit A at ¶ 22; Wade Summary Judgment Exhibit D at DCS 000106.  Therefore, Defendants knew or reasonably should have known that Lifeline would take whatever steps were necessary to ensure DCS's pleasure with Lifeline's services, including terminating Wade. Wade Aff. at ¶ 23; Wade Summary Judgment Exhibit D at DCS 000106.

On or about January 24, 2018, Lifeline terminated Wade's employment with it. Wade Aff. at ¶ 24.  In addition to seeking and obtaining Wade's termination of employment with Lifeline, Defendants took steps to ensure that Wade could not provide any counseling services to any DCS's clients in the future in the event that he obtained employment with a new provider who provided counseling services for and to DCS's clients. *Id*. at ¶ 25; Wade Summary Judgment Exhibit D at DCS 000106.

On January 25, 2018, a letter was sent by DCS to Lifeline, which stated that Wade "could no further contact with DCS clients." *Id*. at ¶ 26; Wade Summary Judgment Exhibit F.  No reason was provided in the DCS letter other than the bald assertion that "DCS has become dissatisfied with the services provided by Mr. Wade." *Id*. at ¶ 27; Wade Summary Judgment Exhibit F.  As a

7

result of his termination from Lifeline, Wade has experienced a loss of income and benefits and has suffered other damages. *Id*. at ¶ 28; Exhibit B (generally).

### III.
### LEGAL STANDARDS GOVERNING
### MOTIONS FOR SUMMARY JUDGMENT

"The same standards applies when considering cross-motions for summary judgment." *Phoenix Bond & Indem. Co. v. FDIC for Washington Fed. Bank for Sav.*, 2020 WL 4048304, * 2 (N.D. Ill. July 20, 2020)(citing *International Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).  Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995).

The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (Brennan, J.,

dissenting)(1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999).  Finally, a scintilla

of evidence in support of the non-movant's position is not sufficient to oppose successfully a

summary judgment motion; "there must be evidence on which the jury could reasonably find for

the [non-movant]." *Anderson*, 477 U.S. at 252.

## IV.
## DEFENDANTS RETALIATED AGAISNT PLAINTIFF IN VIOLATION OF HIS FIRST AMENDMENT RIGHTS

A.    Defendants had the personal involvement necessary to be held liable under § 1983.

Wade agrees with Defendants' proposition that personal involvement is necessary in order to be held liable under 42 U.S.C. § 1983 for violating another's Constitutional rights.  Indeed, the Seventh Circuit has clearly held that "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)).

However, personal involvement does not equal direct responsibility as Defendants argue. In the context of a § 1983 action, "personal involvement" means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Here, each of the named Defendants directly participated in the retaliation against Wade.

Wade expressed his religious beliefs to McSween. Wade Aff. at ¶¶ 12-14.  McSween then told her

supervisors about Wade's alleged unwillingness to provide counseling services to the

transgendered child (again, which he never refused to do).  The remaining Defendants, then,

determined that Wade could not put his religious beliefs and views aside in order to provide

counseling services and set out on a course to ensure that Wade was both terminated from Lifeline

and banned from providing future counseling services to DCS's clients at another provider. Wade

Summary Judgment Exhibit D at DCS 000106.  This retaliation culminated with Wade's

termination (*Id.*), and the letter written by Defendant May. Wade Summary Judgment Exhibit F.

Defendants knew or reasonably should have known that the vast majority of Lifeline's client

referrals came from DCS. Wade Aff. at ¶ 22; Wade Summary Judgment Exhibit D.  Therefore,

Defendants knew or reasonably should have known that Lifeline would take whatever steps were necessary to ensure DCS's pleasure with Lifeline's services, including terminating Wade. Exhibit Aff. at ¶ 23; Wade Summary Judgment Exhibit D at DCS 000106-108. Therefore, the undisputed evidence shows that Defendants each had the personal involvement necessary to be held liable under § 1983 for retaliating against Wade in violation of his First Amendment rights.

B.      Wade's religious beliefs were a motivating factor in Defendants' retaliation against him.

As Wade explained in his cross-motion for summary judgment, in order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges*, 557 F.3d at 546 (internal quotations omitted); *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012)(same); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). If the plaintiff is able to satisfy this *prima facie* case, the burden shifts to the defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, *i.e.*, it would have happened anyway." *Green v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the defendant can make such a showing, the plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011).

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir 2000). "A 'motivating factor' in this context 'is a factor that weighs in [on] the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward action." *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 881 (S.D. Ill. 2009)(quoting *Hasan v. United States Dept. of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005)). A plaintiff may demonstrate that his speech was a motivating factor behind the defendant's retaliatory actions by presenting direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005)(internal quotation omitted). Direct evidence is rare and is something along the lines of a direct admission. *Naficy v. Illinois Dept. of Human Servs.*, 697 F.3d 504, 512 (7th Cir. 2012); *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008).

On the other hand, "[c]ircumstantial evidence . . . is evidence from which a trier of fact may infer that retaliation occurred." *Kidwell*, 679 F.3d at 966. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments

directed at other[s] . . . ." *Long v. Teachers' Retirement Sys. of Illinois*, 585 F.3d 344, 350 (7th Cir. 2009). Regardless of whether the plaintiff offers direct or circumstantial evidence, "[t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). "If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct." *Soto v. Bertrand*, 2009 WL 1220753, * 1 (7th Cir. 2009).

In the instant case, the evidence is clear that Defendants retaliated against Wade because he expressed his religious beliefs as they acknowledge in their summary judgment brief. *See supra*. Specifically, Defendants took steps, not only to ensure that he was terminated from his position at Lifeline, but also to ensure that he could never work with a DCS client in the future. In doing so, Defendants have violated Wade's First Amendment rights, and he is entitled to the summary judgment that he seeks.

As argued *supra*, Defendants cannot have it both ways. This Court held that Wade could not proceed on his Due Process claim because he was not an employee of DCS or the State of Indiana. D/E 93. Because he is not an employee, the *Pickering* balancing test advocated by Defendants is inapposite.

Instead, the test established by the Seventh Circuit in *Bridges* applies. In that opinion, the Seventh Circuit explained that, in order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action."

Here, Wade expressed to McSween his religious beliefs as a Christian and as a Christian minister.  Religious expressions are clearly protected by the First Amendment. *Boy Scouts of America v. Dale*, 530 U.S. 640, 651 (2000).  Indeed, the United States Supreme Court explained in *Dale* that it was not a court's job to inquire into an organization's goals and philosophy in determining whether speech is protected. *Id*.  Rather, the Supreme Court has held that "as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or irrational." *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 124 (1981).  In other words, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Indiana Employment Security Div.,* 450 U.S. 707, 714 (1981).

As Defendants tacitly admit on page eight of their summary judgment brief, they, at a minimum, disagreed with Wade's beliefs, and on the other extreme, were offended by them.  But, it is irrelevant that Defendants found Wade's speech or opinions offensive. *Id*.  Wade's speech was religious in nature; Wade's speech and beliefs were protected by the First Amendment; and based upon Defendants' argument on page eight of their summary judgment brief, Wade's speech and religious beliefs were a motivating factor in the retaliation of which he complains.

Again, it is worth noting that Defendants' actions initially and their argument on summary judgment is premised upon the assertion that Wade refused or could not to provide counseling services based upon his religious convictions.  That simply is untrue, and Wade has denied that he ever indicated that he would not provide counseling services to the transgendered child or that he would express his religious beliefs as part of the counseling rendered. Wade Aff. at ¶¶ 15-19.  Indeed, Defendants' own exhibits reveal that, as Defendant Killen put it, Wade agreed "to give it

a chance and to work with the family . . . ." Wade Summary Judgment Exhibit D at DCS 000106. It was Defendants who decided that Wade was incapable of providing services and needed to be terminated from Lifeline and needed to never work with a DCS client ever again because he held and expressed his religious beliefs. *Id*. at DCS 000106 & DCS 000108; *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)("[B]ecause both plaintiffs were terminated, it is undisputed that each suffered a deprivation likely to deter the exercise of free expression."); *Snedeker v. Girot*, 2017 WL 3704843, * 5 (N.D. Ill. Aug. 28, 2017) ("This is not a high threshold—any deprivation under color of law that is likely to deter the exercise of free speech qualifies.").

In less than a week after Wade expressed his religious beliefs regarding and his hesitancy but agreement to counsel a transgender individual, McSween contacted the other named Defendants in an effort to oust Wade from his position with Lifeline and to blackball him from future employment.  Even a cursory review of the emails exchanged and drafted by Defendants (along with the January 25, 2018 letter) show that Defendants wanted Wade fired because he had questions and issues with transgender individuals. Exhibits D & F.  Those questions, beliefs, and expressions of his opinion were based upon his religious viewpoint, and Defendants understood them as such.  Accordingly, Wade's expression and speech regarding his religious views was a motivating factor in Defendants' adverse actions taken against Wade.

In short, Wade engaged in Constitutionally protected speech when he shared his religious views with McSween.  McSween and the other named Defendants then joined together to violate Wade's First Amendment rights by seeking his termination of employment, both current and future, because he exercised his First Amendment rights.  Accordingly, the facts are undisputed, and Wade has demonstrated that he is entitled to judgment as a matter of law on his First Amendment retaliation claim against Defendants.

Respectfully, the Court should deny Defendants' motion for summary judgment.  Instead, the Court should enter summary judgment in Wade's favor.  At a minimum, the Court should deny both motions and should set this matter for trial.

WHEREFORE, Plaintiff Harry Kevin Wade, by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully moves the Court to deny Defendants' cross-motion for summary judgment, to grant his cross-motion for summary judgment, to enter judgment in his favor and against Defendants on his First Amendment retaliation claim as alleged in his Third Amended Complaint, to set this matter for trial on the issue of damages, and to grant him all other just and proper relief.

Respectfully submitted,

/s/ Mark R. Waterfill

Mark R. Waterfill, #10935-49
Mark R. Waterfill, Attorney at Law, P.C.
2230 Stafford Road
Suite 115, PMB 379
Plainfield, IN  46168
(317) 501-6060
mark@waterfilllaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and accurate copy of the foregoing document was sent to the following

parties *via* the Court's electronic filing system on this 18th day of October, 2020.


Joshua R. Lowry
**Joshua.Lowry@atg.in.gov**

Jordon Stover
Jordan.Stover@atg.in.gov


/s/ Mark R. Waterfill
Mark R. Waterfill, Atty. No. 10935-49